521 So.2d 525 (1988)
Thomas A. OGG, III
v.
William Loring FERGUSON, III.
No. CA-8298.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1988.
*526 Margot Mazeau, Sheila Walet, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for plaintiff-appellant, Thomas A. Ogg, III.
Camilo K. Salas, III, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendant-appellee, William Loring Ferguson, III.
David F. Edwards, Laura G. Comiskey, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellees, Richard B. Fox and George Denegre, in their capacity as trustees of the trust established under the last will and testament of William L. Ferguson, Jr.
Before BYRNES, WARD and WILLIAMS, JJ.
WARD, Judge.
This appeal is from a judgment ordering the payment of attorneys' fees and court costs for the wrongful seizure of property under a writ of fieri facias. We affirm.
*527 The writ was issued in execution of a consent judgment by which Thomas A. Ogg, III settled a claim against William Loring Ferguson, III. The settlement, dated April 21, 1986, provided that Ferguson would pay Ogg $26,212.00, but if Ferguson paid within 120 days, Ogg would accept $23,500.00 in full satisfaction. The discount provision was agreed upon because Ferguson allegedly told Ogg that the sale of a house in which he had an interest was pending and that he would soon have the cash proceeds with which to pay the judgment.
Nevertheless, Ferguson did not immediately pay, and Ogg's attorney cited Ferguson for a judgment debtor examination on June 6, 1986. Ferguson appeared for the examination unrepresented by counsel, and the examination was conducted in chambers and not recorded. There is, therefore, some dispute as to Ferguson's testimony about the property which was the focus of the examination, the same double house on Jefferson Avenue in Uptown New Orleans in which Ferguson had earlier claimed an interest. Ferguson's testimony and the documents which he produced, including his father's will, prompted Ogg's counsel to request that Ferguson verify his interest in the property by immediately telephoning a family attorney. The attorney informed Ogg's counsel that the property was the object of a trust established by Ferguson's father's will. Ferguson and his two sisters were the beneficiaries of the trust which provided that each beneficiary was to receive one-half of his or her respective interest in the trust at age 25. The attorney, who represented the trustees, also informed Ogg's counsel that because Ferguson was 31 years old, the trustees had agreed to distribute one half of his share of the proceeds to him when the house was sold.
On June 9, 1986, Ogg's attorney wrote a letter to one of the trustees, explaining the terms of the consent judgment against Ferguson and requesting the trustee to release trust funds so that Ferguson could pay the judgment within the 120 day period. The attorney for the trustee responded four days later by hand delivered letter. He explained in the letter that because the trust was a spendthrift trust, neither the principal nor the first $20,000.00 per year of income was liable to seizure for satisfaction of a beneficiary's debts, nor could the trustees voluntarily invade the principal for that purpose.
Ogg's attorney then searched the public records in Orleans Parish which showed that the Jefferson Avenue property was registered in the name of Ferguson's deceased father and that Ferguson claimed it as his homestead on the City's tax rolls. With this information in hand, Ogg's counsel requested a writ of fieri facias, ordering the sheriff to seize the property for judicial sale. When Ferguson, who was living in the house, was served with the writ he retained an attorney who filed a petition for a temporary restraining order, permanent injunctive relief, attorney's fees and damages. In the verified petition, Ferguson's counsel pleaded that Ferguson owned a one-sixth undivided interest in the property. On the same day that Ferguson's petition was filed, Ogg's counsel requested the sheriff to limit the seizure to an undivided one-sixth interest in the property. The following day, the trustees filed an intervention in the lawsuit, also seeking to enjoin the seizure and sale and requesting attorney's fees and damages. The intervenors claimed that title to the property was solely in their names as trustees pursuant to the judgment of possession rendered in Ferguson's father's succession in Jefferson Parish in 1970. Ferguson's counsel later amended his petition, withdrawing his claim of ownership. At a pretrial conference the trustees provided Ogg's counsel with a receipt which showed that the property Ferguson had received from the trust on his 25th birthday had not included an interest in the Jefferson Avenue property. Ogg's attorney then requested that the writ be recalled and the property released from seizure.
With the seizure halted, Ferguson and the trustees persisted in their claims for damages and attorney fees. Following a hearing, the Trial Judge found that the seizure was wrongful. He ordered Ogg to *528 pay $250.00 in damages to Ferguson and the same amount to the trust, as well as $3,000.00 to each for attorney's fees, plus court costs. Ogg appeals, his new counsel assigning four errors.
Ogg first contends that the Trial Court erred in finding that his former attorney had reason to know the nature and extent of Ferguson's interest in the property. This contention is based primarily upon the fact that neither the judgment of possession by which the trust received the property nor the trust itself was recorded in the Orleans Parish conveyance records as required in order to affect third parties. Inexplicably, the Orleans Parish records which Ogg's counsel examined prior to the seizure still showed that the property belonged to Ferguson's father whose succession, unbeknownst to Ogg's attorney, had been closed in 1970 in Jefferson Parish. Ogg now argues that he was entitled to rely upon the public records, which together with Ferguson's father's will and the other information he had received, substantiated his belief that Ferguson had an interest in the property. We are not persuaded by this argument.
It lacks merit for two reasons. First, the public record did not show that Ferguson had an interest in the property, and it cannot be relied upon for that fact. Second, the information gained from examination of the public record was not the only information Ogg's attorney had before he requested the writ. The testimony and documentary evidence presented at the hearing show that Ogg's attorney knew of the trust's existence and of the terms of the willneither of which conclusively proved that Ferguson would have an interest in the property at the time it was seized. This knowledge, along with the public record which Ogg's counsel knew did not reflect the current ownership, should have prompted further investigation rather than relianceparticularly before requesting seizure of a residence for judicial sale. Accordingly, we reject this assignment of error.
We next consider Ogg's argument that the Trial Court should not have permitted, and given effect to, the retraction of Ferguson's averment made in his original verified petition for injunctive relief, that he owned a one-sixth interest in the property. Ogg contends that the statements should be construed as a judicial confession of Ferguson's interest, and he should not have been allowed to amend his petition to conform to the intervenors' claim that the trust owned the property.
Ogg's argument is based upon La.C.C. 1853:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
The last clause of Article 1853 is fatal to Ogg's argument. Ferguson's counsel revoked his "judicial confession" by amending his petition when he discovered that it contained an error of fact. We therefore reject this assignment of error.
Ogg also argues that Ferguson's representation that he owned one-sixth of the property is evidence that he made the same representation to Ogg's attorney, inducing him to request the writ. Even assuming that the representation of ownership set forth in Ferguson's petition corroborates Ogg's counsel's claim that Ferguson made the same representation to him, such a bare claim of ownershipmuch less one which was contradicted by other informationdoes not justify a writ of fieri facias.
Ogg's two remaining assignments of error are both based upon the final paragraph of La.C.C.P. art. 2298:
In the event injunctive relief is granted to the judgment debtor or third party claiming ownership of the seized property, if the court finds the seizure to be wrongful, it may allow damages. Attorney's fees for the services rendered in connection with the injunction may be included as an element of the damages.
Ogg argues that the award of attorney's fees and damages was an abuse of the Trial Court's discretion. Ogg points out *529 that by its wording, Article 2298 authorizes the award of attorney's fees and damages only when injunctive relief has been granted and in this case the writ was recalled before the hearing on the injunction. He contends, moreover, that his seizure was not "wrongful." Instead, he characterizes it as a good faith, but erroneous, seizure which was the direct result of the trustees' failure to comply with legal recording requirements and of Ferguson and the trustees' failure to provide accurate information and proof as to the ownership of the property.
We do not construe the literal wording of Article 2298 to bar the granting of reasonable attorney's fees and de minimis damages in a case such as this in which the efforts of the defending attorneys caused the creditor to terminate the seizure. See, Major Mortgage Funding Corp. v. Fleeks, 487 So.2d 761 (La.App. 3rd Cir.1986), in which attorney's fees were granted under La.C.C.P. 2751 even though the seizing creditor had halted the executory proceedings before an injunction issued.
As for Ogg's protestation of good faith, the rule is the same as that for attachments of property.
[T]he evidence must clearly show that the plaintiff's right to it existed at the time the writ issued.... Thus, even though the surrounding circumstances at the time the writ issues may reasonably seem to justify the attachment; the attachment will not be sustained if, on trial of the motion to dissolve it, the evidence shows that in fact the statutory ground for the attachment did not exist. The creditor attaches at his risk that, whatsoever the appearances at the time of attachment, the evidence on a motion to dissolve will prove that in fact no lawful grounds existed to support the attachment.
* * * * * *
As stated by our Supreme Court in General Motors Acceptance Corp. v. Sneed, 167 La. 432, 119 So. 417, 421 (1929): `Where a plaintiff sues out a writ of attachment in the honest belief that it is necessary for the protection of its rights, it seems rather unfortunate that it must be held liable for the payment of damages. But the writ of attachment is an extremely harsh remedy, and, when a party makes use of this powerful legal weapon he must be ready to respond in damages if it be found that the writ was wrongfully used.' [Citations omitted.]
American Steel Building Co. v. Brezner, 158 So.2d 623, 629-30 (La.App. 3rd Cir. 1963).
Accordingly, we find no abuse of the Trial Court's discretion.
Ogg's final argument is that Ferguson has no right of action because he is not the owner of the property but merely a beneficiary of the trust. We do not agree. Under Code of Civil Procedure Article 2298, the right to seek injunctive relief to prohibit the sale of seized property is given to "the judgment debtor or to a third person claiming ownership of the seized property." Ferguson is the judgment debtor. We do not construe this provision to mean that only a person who claims ownership in the property may seek injunctive relief and payment of attorney's fees. Rather we believe the requirement of a claim of ownership applies only to third parties. The judgment debtor should always have the right to enjoin a wrongful seizure because the judgment debtor has an interest in seeing that the execution of the judgment against him is conducted properly. We, therefore, reject the argument that Ferguson has no right of action.
For the foregoing reasons, the judgment of the Trial Court is affirmed. All costs of appeal to be paid by Thomas A. Ogg, III.
AFFIRMED.