527 So.2d 1154 (1988)
Melvin PACHOLL, et ux., Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., et al., Defendants-Appellees.
No. 87-546.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*1155 Fuhrer & Flournoy, George Flournoy, Alexandria, for plaintiffs-appellants.
Gist, Methvin, Hughes & Munsterman, De Witt T. Methvin, Jr., H. Greg Walker, Alexandria, for defendants-appellees.
*1156 Before DOUCET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is an appeal from a judgment for defendants in a personal injury action for damages. Plaintiffs, Melvin Pacholl and his wife, sought damages arising out of an accident that occurred on December 10, 1984, at a service station in Forest Hill, Louisiana. Melvin Pacholl suffered personal injuries in that accident. The jury found Pacholl solely at fault. Plaintiffs complain on this appeal that the trial court committed four prejudicial errors: (1) allowing defendants to bring out before the jury the fact that Pacholl had filed and settled a workmen's compensation claim for a back injury that occurred prior to the accident in dispute; (2) commenting on the evidence; (3) giving incorrect jury charges; and (4) submitting improper jury interrogatories. As their fifth assignment of error they complain that the jury manifestly erred in finding Pacholl solely at fault. We have studied these five assignments of error in the record. We find no error. We affirm.
FACTS
On December 10, 1984, Melvin Pacholl purchased a 1972 Dodge Superior motor home from Jimmie Walker Enterprises of Alexandria, Louisiana. Walker, who was in the motor home business, had acquired the motor home from Grover Gunn a couple of days earlier. Gunn had purchased the motor home new in 1972 and had owned it for 12 years. He testified it was in good mechanical condition when he sold it to Walker.
Immediately after his purchase of the motor home from Walker, Pacholl obtained a safety inspection sticker and then drove to his insurance company's office to have the vehicle insured. While driving home, Pacholl stopped to check the tires at a local service station operated by Louis Patterson.
This was where the accident happened.
After the tires were aired, the motor home would not start. Pacholl, a certified mechanic who had mechanical training in the Army and completed a 22-month course in mechanics at a vo-tech school, checked and cleaned the battery connections as well as the cables to the starter. Everything seemed in order but the motor home still would not start. Patterson, the station operator, trying to help, drove his truck next to the motor home for a "jump start" using Patterson's jumper cables, but the vehicle would not jump start. Pacholl then decided the only way to start it was to get under it and hook the jumper cables directly to the starter. He testified that all this time the gear shift was in "park" and the parking brake was on. Pacholl, while under the motor home, touched the starter post with a cable and the engine turned over. Realizing he would be able to get his motor home started Pacholl hollered for someone to get in the vehicle and give it gas. Patterson volunteered.
When Pacholl, under the motor home, touched the "hot" battery cable to the starter post the second time, the engine turned over. Pacholl hollered, "tell him to give it some gas". Patterson did. The motor home lunged forward 10-12 feet. As it shot forward it twisted Pacholl's leg under the right wheel rolling over it. Patterson testified he stopped the motor home using the foot brake.
Pacholl was hospitalized with a bad knee injury. After he was released from the hospital he found he once more could not start the motor home which was then parked at his house. Contacting M & M Dodge in Alexandria for assistance in locating the problem, he was told it might be the starter relay and where the relay was located. Pacholl replaced the starter relay and it cranked right up. He then had M & M Dodge check the transmission where nothing was found to be wrong.
On these facts the jury found Pacholl solely responsible for his injury.
FIRST ASSIGNMENT OF ERROR: Plaintiff's Compensation Settlement.
Before the trial started, the presiding judge ruled on a motion in limine filed by plaintiff regarding a 1981 work-related back injury. The court ruled forbidding mention of Pacholl's worker's compensation *1157 settlement, but declared that defense counsel could question plaintiff about the injuries he sustained from that accident. On appeal plaintiff is alleging that defense counsel prejudiced Pacholl's credibility with the jury through repeated attempts to inform the jury of Pacholl's worker's compensation settlement arising from the 1981 work-related injury.
It is true that while Pacholl was on cross-examination defendants' attorney came dangerously close to violating the spirit, if not the letter, of the trial court's prohibition against reference to the worker's compensation settlement. While questioning plaintiff about language appearing in the court approved settlement papers, in an apparent effort to tie that language to him through his sworn signature to the verification, counsel used words like "oath", "pleading", "allegations", and referred to a document signed by a judge, and plaintiff's conversation with that judge, and generally used other descriptive language likely to be recognized by an alert juror as describing a lawsuit, and a settlement, over an injury. This was what the trial judge's in limine order had prohibited. This went on for some time, with plaintiff's counsel raising objections and the judge sustaining them, zealous counsel for defendants persisting in his efforts to show an inconsistent statement. Finally, the obviously attentive trial judge intervened:
"Well, I don't see anything inconsistent yet. And you're referring there to a documentation, uh, paragraphs prepared by lawyers. Pleadings and those are, of course, legal statements and I, you know, if you want to ask him now about any particular disability that you had. At any particular time. As it relates to his capacity to do anything now. Sure, go ahead. But not in an effort tangled up through some declarations of, uh, documents and so forth. Unless he prepared the documents and had evidence to back `em up."
And moments later, the trial judge addressed defense counsel again:
"Well, let's get clear on what you're objecting to and what my ruling is. My... my ruling is that you have unlimited scope to question him as to any disability whatsoever. But not tangled up and reading certain catchall phrases from some sort of pleading that he didn't actually prepare himself. Now, that's ... that's very plain."
All of this was in the presence of the jury. Thus, whatever damage counsel's near-violation of the court's order did, the trial judge's words, chastising counsel and taking plaintiff's side, undid. What might otherwise have been an improper comment on the evidence, was in this case merely a balancing of the scales.
We conclude that no prejudice resulted to plaintiff by this episode at the trial.
SECOND ASSIGNMENT OF ERROR: Trial court's commenting on the evidence.
Plaintiff claims the trial court commented on the evidence when the judge stated in his charge to the jury:
"Now, Jimmy Walker, d/b/a Jimmy Walker Enterprises, the seller of the vehicle involved, and Chrysler Corporation, the manufacturer, are not defendants in this particular suit. But since the evidence suggests some involvement of them in this matter, you will have to pass judgment on whether or not one or both of them are liable. And if so, to what extent ..."
Had the jury answered the verdict sheet interrogatories Nos. 1 through 5 in such a way as to reach interrogatory No. 6, that interrogatory would have required them to say whether the accident was caused by the fault of any of four personsplaintiff, Patterson, Walker and Chryslerand the percentage of fault of each. That is what the trial judge was explaining to them. The trial judge explained each interrogatory on the verdict sheet. He did not comment on the evidence. It was necessary for the judge to say what he did in order to comply with the requirements of La.C.C.P. art. 1812, as we will soon explain.
THIRD ASSIGNMENT OF ERROR: Incorrect Jury Charges.
The trial judge gave a short products liability instruction and mentioned Walker and Chrysler.
*1158 Appellants argue that they proved there were no defects in the transmission or brakes, and that, therefore, there was no need to instruct the jury concerning liability for a defective product. They argue that the instruction was additionally incorrect because it failed to tell the jury that the defendants bore the burden of proof as to the existence of a defect that might have attributed fault to Walker and Chrysler. We find no merit to this assignment of error.
Walker, the seller, and Chrysler, the manufacturer of the motor home, were originally defendants in this suit. Before trial Walker and Chrysler settled with plaintiff, and they were dismissed from the suit, leaving as defendants in the jury trial only Patterson and his insurer. La.C.C.P. art. 1812(C)(2) requires that, absent a waiver by all parties, the court must submit to the jury special written questions inquiring as to whether another person, whether party or not, was at fault, and if so, whether such fault was a legal cause of the damages and the degree of such fault, expressed in percentage. See also, Lemire v. New Orleans Public Service, Inc., 458 So. 2d 1308 (La.1984). Under the authority of this article the trial court required the jury to return special written findings as to cause-in-fact, fault, and degree of fault, with respect to Pacholl, Patterson, Walker and Chrysler. Interrogatory No. 1 was: "DO YOU FIND ANY OF THE PARTIES IN THIS CASE AT FAULT OR RESPONSIBLE IN CAUSING THE ACCIDENT?" The jury checked off the answer that read: "YES______ (SOMEONE AT FAULT)". They then proceeded to Interrogatory No. 2 which asked, "DO YOU FIND THAT MELVIN PACHOLL IS SOLELY RESPONSIBLE FOR CAUSING THE ACCIDENT?" To this question they responded by checking off the answer, "YES ________", and that ended the case. The failure of the trial judge to discuss burden of proof as to the non-party persons did not contribute to the adverse decision. Also, a short products liability instruction was appropriate. In view of the earlier suit against and settlement with the two dismissed defendants, there was a reasonable basis for submitting to the jury the inquiry as to whether other, nonparty persons, were at fault.
FOURTH ASSIGNMENT OF ERROR: Improper Jury Interrogatories.
The special verdict form is here criticized. The Pacholls complain that there was no basis for even submitting Interrogatory No. 1, because it was duplicitous, the same question being repeated in another form in the remaining interrogatories. Interrogatory No. 1 (we repeat) was: "DO YOU FIND ANY OF THE PARTIES IN THIS CASE AT FAULT OR RESPONSIBLE IN CAUSING THE ACCIDENT?" We find that, even if this interrogatory was unnecessary, it was at the same time harmless.
Mainly, appellants criticize the order of presentation of the questions inquiring as to fault of the parties and nonparties. Appellants complain that the question of Pacholl's fault should not have headed the list, and should not have been fashioned as an inquiry as to whether he was solely responsible.
There is some merit to this argument. La.C.C.P. art. 1812 reads in pertinent part:
"A. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event, the court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue. ...
"B. ...
"C. In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:

*1159 (1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
(3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:
(a) Whether such negligence was a legal cause of the damages, and, if so:
(b) The degree of such negligence, expressed in percentage. ..."
This article appears to require that the interrogatories should address first, the fault, legal causation, and percentage of fault of the defendants; second, those inquiries with respect to other persons; and third, the negligence of the plaintiff, his negligence as a legal cause of the damages, and the degree of such negligence. In the present case such an order of presentation of the interrogatories would have been consistent with the order of discussion of the issues and principles of law contained in the charges, as well as consistent with the pattern suggested by Article 1812. However, the article does not expressly require a particular order for posing these questions to the jury, and a good argument exists that this, like so much else having to do with special verdicts, is left to the considerable discretion of the trial judge. We cannot see how plaintiff was actually prejudiced in this case. The trial judge, before retiring the jury to deliberate, went to great pains explaining the verdict sheet to them, reading out loud and talking about each of the seven interrogatories, including the question on the amount of damages. Even if it would have been better for the trial court to have followed the statutory outline in framing the interrogatories, we cannot say that the failure to do so in this case is a ground for reversal.
FIFTH ASSIGNMENT OF ERROR: Jury erred manifestly in holding plaintiff solely at fault.
The jury's finding that Pacholl was 100% responsible for his own injury is, of course, also a finding that neither Patterson, nor Walker, nor Chrysler was at fault. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, a reviewing court will not disturb the factual findings on appeal in absence of clear error. Pitre v. Kroger Co., 471 So.2d 1123 (La.App. 3d Cir.1985).
Pacholl testified that when he went under the vehicle he left the shift in "park" and the hand brake on. Patterson testified he never touched anything except the steering wheel and the gas pedal. He testified that when Pacholl asked him to, he "gave it gas" by depressing the gas pedal. No person could say what caused the motor home to lurch forward. The mechanical explanation of how and why the motor home moved was simply not proved. Appellants argue that because they proved that there was no defect in the transmission, Patterson must have accidently or otherwise moved the gearshift. But it was not established that movement of the gearshift was the only, or even the most mechanically probable way that the accident could have happened. While Patterson might have accidentally moved the gearshift from park to neutral to drive, and while he might have done something else, advertently or inadvertently, to cause the vehicle to move, these were but possibilities that were vehemently denied by Patterson in his testimony. Based on the evidence, the jury could have easily determined that all that Patterson did was get in the vehicle and sit down and step on the gas when Pacholl told him to. The jury could easily have concluded that Patterson was unaware that the vehicle would lurch forward when he stepped on the gas. Simply put, the jury could find that Patterson owed no *1160 duty to Pacholl to refrain from stepping on the gas when told by Pacholl to do so. On these facts we cannot say that the jury was clearly wrong in making the implied finding that Patterson was not at fault. The jury could reasonably and legally conclude under the facts proved that the vehicle belonged to Pacholl, he was responsible for it, he had it under his control, and the accident was his own doing.
For these reasons the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.