590 So.2d 795 (1991)
Sudhir K. SINHA
v.
Dr. Eugene DABEZIES, et al.
No. 90-CA-0473.
Court of Appeal of Louisiana, Fourth Circuit.
November 26, 1991.
Writ Denied February 14, 1992.
*796 Joseph R. Ward, Jr., Anthony J. Clesi, Jr., Ward & Clesi, New Orleans, for plaintiff-appellant.
Lawrence L. McNamara, Elaine W. Selle, Adams and Reese, New Orleans, for defendants-appellees.
Before BYRNES, WILLIAMS and ARMSTRONG, JJ.
BYRNES, Judge.
Dr. Sudhir Sinha appeals the dismissal of his medical malpractice action against Dr. Eugene Dabezies and L.S.U. Private Medical and Surgical Clinic. We affirm.
Dr. Sinha, a biochemist with a Ph.D. degree in chemistry, had two episodes of gastrointestinal (GI) bleeding in 1981 and 1982, which were treated with medication in Florida. Dr. Sinha remained relatively asymptomatic after 1982. On May, 20, 1985, at the L.S.U. Clinic Dr. Dabezies, an orthopedic surgeon, examined Dr. Sinha's right thumb which had been sore for several days with increased pain when he mowed his lawn. Dr. Dabezies diagnosed the patient's condition as mild tendonitis or arthritis and prescribed the drug Naprosyn. Dr. Sinha took two tablets for a couple of days and stopped when the pain subsided. When the pain reappeared, after two or three days he began taking one tablet a day.
Upon noticing blood in his stool, Dr. Sinha went to the emergency room of Meadowcrest Hospital on June 5, 1985, where he was examined by Dr. Jyoti Chakraborti. *797 After Dr. Sinha remained in intensive care for five days, Dr. Akio Kitahana performed surgery on the bleeding ulcer on June 11, 1985, undertaking a bilateral truncal vagotomy and hemigastrectomy, billroth I anastomosis with tube gastrostomy. The procedure involved severing the nerves to the stomach which aid in the production of acid and removal of the lower half of the stomach. Dr. Kitahama reattached the small intestine to the upper portion of the stomach. During surgery, Dr. Sinha underwent a blood transfusion.
In March, 1986, Dr. Sinha was hospitalized for inflamation of the stomach and intestine and was admitted for gastrointestinal bleeding in October, 1986. On November 25, 1987, Dr. Tejas Godiwala, a gastroenterologist, began treating Dr. Sinha for recurrent episodes of gastroenteritis and GI bleeding due to bile reflux, where bile backs up into the stomach from surgery. Dr. Godiwala prescribed the drug Questran and recommended Dr. Sinha have a yearly endoscopy and checkup.
On May 20, 1986, Dr. Sinha filed a medical malpractice action, claiming that Dr. Dabezies was negligent in failing to provide accurate and proper medical care; in prescribing Naprosyn; and failing to warn the plaintiff that Naprosyn should not be taken by a patient with a prior history of upper GI and ulcer problems. At the close of plaintiff's evidence, the trial judge rendered a directed verdict in favor of L.S.U. Private Medical and Surgical Clinic. Thereafter, the jury returned a verdict in favor of Dr. Dabezies.
On appeal, Dr. Sinha contends that the trial court erred in: (1) ruling that Dr. Dabezies' original answer was not a judicial confession and was not admissible as a prior inconsistent statement; (2) prohibiting the plaintiff from questioning Dr. Dabezies regarding facts stated in his original answer; (3) restricting plaintiff's redirect examination of Dr. James Butler; and (4) commenting on the evidence. Dr. Sinha argues that the jury erred in: (1) finding that Dr. Dabezies did not practice below the standard of care for orthopedic surgeons in his treatment of the plaintiff; and (2) failing to award damages.
Dr. Sinha's initial claims concern the change in Dr. Dabezies' original answer filed on August 20, 1986 and his amended answer of May 7, 1987. Paragraph 15 originally stated as follows:
On or about May 20, 1985, Mr. Sinha presented to Dr. Dabezies complaining of pain and swelling at the base of his right thumb. Mr. Sinha gave a history that he was 41 years old and a biochemist. He stated that he had previously had a duodenal ulcer and upper gastrointestinal bleeding. Mr. Sinha advised of no trauma to his thumb but stated that the onset of his thumb problems was three days before and that it was worse after yard work. On physical examination, Dr. Dabezies found the thumb to be slightly tender at its base and painful. There was also some fullness of the thenar eminence but no sign of a tumor. Dr. Dabezies prescribed appropriate medication, but, Dr. Dabezies also explained and warned of the risks involved with the medication, including possible aggravation of a pre-existing ulcer or gastrointestinal bleeding problems. Mr. Sinha, an educated man, manifested understanding and consented to take the medicine because of his pain, notwithstanding the risks. Dr. Dabezies made it clear that Mr. Sinha had a clear option of not taking the medicine. Moreover, Mr. Sinha was advised to re-contact Dr. Dabezies if there were any problems and to return to Dr. Dabezies if the thumb got no better within about a week's time. Mr. Sinha never re-contacted Dr. Dabezies for treatment either by phone or in person.
In Dr. Dabezies' amended answer, Paragraph 15 declared:
On or about May 20, 1985, Mr. Sinha presented to Dr. Dabezies complaining of pain and swelling at the base of his right thumb. Mr. Sinha gave a history that he was 41 years old and a biochemist. He stated that he had previously had some problems with upper gastrointestinal (GI) symptoms. Mr. Sinha did not advise Dr. *798 Dabezies that he had had ulcers before. Mr. Sinha advised of no trauma to his thumb but stated that the onset of his thumb problems was three days before and that it was worse after yard work. On physical examination, Dr. Dabezies found the thumb to be slightly tender at its base and painful. There was also some fullness of the thenar eminence but no sign of a tumor. Dr. Dabezies prescribed rest from working with the thumb and appropriate medication, but, Dr. Dabezies also explained and specifically warned of the risks involved with the medication, including possible gastrointestinal (GI) side effects, with the equivalent effect of aspirin. Mr. Sinha, an educated man, manifested understanding and consented to make the medicine because of his pain, notwithstanding the risks. Dr. Dabezies made it clear that Mr. Sinha had a clear option of not taking the medication because convalescence would occur in time. Moreover, Mr. Sinha was advised to discontinue the medicine and to re-contact Dr. Dabezies if there were any problems and to return to Dr. Dabezies if the thumb got no better within about a week's time. Mr. Sinha never re-contacted Dr. Dabezies for treatment either by phone or in person.
On the morning of trial, the trial court ruled that the initial statement in the defendant's answer did not constitute a judicial confession under LSA-C.C. art. 1853 and was not admissible as a prior inconsistent statement. The trial court prohibited plaintiff from questioning Dr. Dabezies concerning the statement.
Louisiana Civil Code article 1853 provides:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
Pursuant to La.C.C.P. Art. 1151, "a defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party." In the present case, defendant's counsel amended his answer by court order.
An admission in a pleading falls within the scope of a judicial confession and is full proof against the party making it. Starns v. Emmons, 538 So.2d 275 (La. 1989). A judicial confession may be revoked only on the ground of error of fact. State, Dept. of Transp. & Development v. Clark, 548 So.2d 365 (La.App. 2nd Cir.), writ denied, 552 So.2d 395 (La.1989); Lewis v. Willamette Industries, Inc., 499 So.2d 506 (La.App. 2nd Cir.1986), writ denied, 501 So.2d 197 (La.1987), appeal after remand, 537 So.2d 780, writ denied, 540 So.2d 331 (La.1989). A consent judgment debtor was entitled to revoke his admission that he owned one-sixth interest in certain property and was entitled to amend his petition when he discovered that pleading contained an error of fact as to ownership of the property. Ogg v. Ferguson, 521 So.2d 525 (La.App. 4th Cir.1988). The plaintiff passenger was not bound by the allegations of the automobile driver's negligence where his attorney alone signed the petition. Merriell v. Collins, 218 So.2d 632 (La.App. 4th Cir.1969).
A judicial confession should not estop a curative amendment absent a showing that the adversary was misled or deceived. Guidry v. Barras, 368 So.2d 1129 (La.App. 3rd Cir.1979), modification recognized by Pitfield v. Dupont Family Playhouses, 571 So.2d 892 (La.App. 5th Cir. 1990), writ granted, 575 So.2d 817 (La. 1991). The plaintiff's reliance on an admission in defendant's answer precluded that defendant from asserting a contrary position on appeal. Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). However, in the present case, counsel for the defendant amended the answer over two years prior to trial so that plaintiff was not prejudiced in preparing his defense. Dr. Dabezies neither signed the original answer nor an affidavit attesting to the facts asserted in the original answer. Additionally, *799 the amendment as to the patient's prior history presents errors of fact. Dr. Dabezies counsel "revoked" any "judicial confession" by amending the answer when he discovered it contained these errors of fact following Dr. Dabezies' deposition on February 26, 1987. Therefore, we find that the original statement was not a judicial confession.
Dr. Sinha also argues that Dr. Dabezies' original answer constituted a prior inconsistent statement admissible under article 607(D) of the Louisiana Rule of Evidence to attack Dr. Dabezies' credibility. However, the original answer was not signed by Dr. Dabezies and is not his statement. His attorney alone signed the pleading. See Merriell, id.
If the original answer were a prior inconsistent statement, it is within the trial court's discretion to present the statement to the jury. Bank of La. in New Orleans v. Charia, 359 So.2d 724 (La.App. 4th Cir.), writ denied, 362 So.2d 576 (La.1978). Louisiana Code of Evidence Article 607(D)(2) provides:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
* * * * * *
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
Under Louisiana Code of Evidence art. 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Where the defendant admitted that all three of her children were born as a result of her cohabitation with the plaintiff in her original answer, the appellate court upheld the finding that the defendant was not bound by that admission nor was the statement admissible when she had amended her answer in Boudreaux v. Matt, 370 So.2d 139 (La.App. 3rd Cir.1979). Absent a clear abuse of discretion, the trial court's ruling on evidentiary rulings will be upheld. Pearce v. Power and Telephone of Kentucky, Inc., 533 So.2d 46 (La.App. 3rd Cir.1988). Failure to consider the record in a prior suit constituted reversible error in Lakeshore Property Owners Ass'n, Inc. v. Delatte, 524 So.2d 126 (La.App. 4th Cir.1988). However, in that case an admission that was stipulated in the prior record was not revoked by an amended pleading as found in the present case. We find no error in the trial court's ruling to exclude from evidence the defendant's statement in his original answer. The statement was not signed by the defendant. If there were any admission, it was revoked by the amended answer. For the same reasons, we further find no abuse in the trial court's discretion in prohibiting the plaintiff from questioning Dr. Dabezies regarding the facts stated in the original answer.
Dr. Sinha also contends that the trial court erred in restricting the plaintiff's redirect examination of Dr. James Butler. Louisiana C.E. Art. 611(D) provides as follows:
(D) Scope of Redirect Examination; Re-Cross Examination.
A witness who has been cross examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other party shall be provided an opportunity to re-cross on such matters.
Plaintiff asserts that he should have been able to question the witness on redirect examination by restating hypothetical fact situations favorable to the plaintiff after the defendant elicited hypothetical questions favorable to the defendant. The trial court sustained the defendant's objection and ruled that the questions had been already asked. The plaintiff previously *800 had questioned Dr. Butler on a physician's duty to inquire into a patient's medical history prior to prescribing Naprosyn. The trial court's discretion in conducting a trial encompasses rulings of the admissibility of witnesses' testimony. Combs v. Hartford Ins. Co., 544 So.2d 583 (La.App. 1st Cir.), writ denied, 550 So.2d 630 (La.1989). We find no error in the trial court's ruling to limit plaintiff's redirect of his expert witness because such testimony was repetitious.
Dr. Sinha argues that the trial court erred in commenting on the evidence. Plaintiff claims that counsel for defendant attempted to relate Dr. Sinha's stomach problems to the fact that he is an Indian inclined to eating seasoned Indian food and that he had a stressful job. Plaintiff attempted to rebut these inferences by questioning Dr. Chakroborti about the inferences after Dr. Chakroborti stated he did not think he personally had an ulcer. Defense counsel objected, stating that whether Dr. Chakroborti ate Indian food or had a stressful job was "really of no interest or relevance." Plaintiff avers that the trial judge erred in commenting on the evidence on sustaining the objection by giving his opinion that, "he doesn't have it. And ten million other people have it. That won't prove a thing."
Louisiana C.C.P. Art. 1791 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The judge's response demonstrated that the question was irrelevant to Dr. Sinha's case just as it was irrelevant whether ten million other people have ulcers. The plaintiff infers that the comment trivilized Dr. Sinha's ailment by stating that ten million other people also had the same problem and had the effect of telling the jury that Indian food, not Naprosyn, caused the ulcer. In Pacholl v. State Farm Mut. Auto Ins. Co., 527 So.2d 1154 (La.App. 3rd Cir.), writ denied, 532 So.2d 158 (La.1988), the appellate court found that the trial court's statement in a jury charge did not comment on the evidence but was necessary in explaining the jury interrogatories. In the present case the trial court did not comment on the facts but noted the irrelevance of plaintiff's line of questioning. We find no reversible error in the trial judge's comment on the lack of relevancy of the testimony.
Dr. Sinha also contends that Dr. Dabezies practiced below the standard of care of orthopedic surgeons by failing to obtain an adequate history of prior illnesses, negligently prescribing the drug Naprosyn, and failing to adequately warn Dr. Sinha of the drug's adverse side effects.
Plaintiff initially avers that Dr. Dabezies was negligent in failing to ask Dr. Sinha specifically whether he had a prior ulcer in view of the patient's history of general gastrointestinal problems. Dr. John Leslie Chase, an orthopedic surgeon testifying on behalf of the plaintiff, opined that it was below the standard of care of an orthopedic surgeon to fail to explore the patient's history to find out the nature of the gastrointestinal symptoms. On examination of Dr. Chase, defense counsel referred to the 1985 Physician's Desk Reference which had no contraindication to use Naprosyn in patients with a history of ulcer disease.
Dr. James Butler, an orthopedic surgeon who testified on behalf of the defendant, stated that an orthopedic surgeon is obligated to ask questions about any allergies or side effects for any medicines and ask if the patient had any stomach ulcers. However, Dr. Butler also found that Dr. Dabezies' inquiry was appropriate and adequate based on the medical conclusion that the patient had suffered from dyspepsia.
Dr. Reginald Sanders, a rheumatologist, also testified that he would want to know how severe the prior history of GI symptoms had been. He stated that it would be a breach of the standard of care if the physician totally failed to ask any questions of prior GI symptoms. Dr. Sanders also found it appropriate to prescribe Naprosyn with the warnings and instructions given a history of bleeding ulcers four *801 years ago, with no surgery and no problems afterwards.
On behalf of the defendant, Dr. George Cary, an orthopedic surgeon, affirmed that if the plaintiff had a history of bleeding ulcers four years ago but had not undergone surgery and had no problems since then, it was appropriate to prescribe Naprosyn with warnings and instructions.
The expert witnesses agreed that the proper standard of care requires an orthopedic surgeon to warn a patient of the drug's potentially hazardous side effects. According to the section on warnings in the 1985 Physicians Desk Reference to which defense counsel referred in examining Dr. Chase, Naprosyn "should not be given to patients with active peptic ulcers unless the potential benefit outweighs the potential risk. In such patients and other patients with a history of gastrointestinal disease, it should be given under close supervision" (emphasis added).
Dr. Sinha testified that Dr. Dabezies failed to warn him of the side effects from taking Naprosyn. On Dr. Sinha's chart dated May 20, 1985, the word "warned" appears directly below the word "Naprosyn" in Dr. Dabezies' handwritten notations. At trial Dr. Dabezies could not recall his exact warning given to Dr. Sinha but related that his routine advice included warnings of kidney and liver problems, risks of GI disturbances and very common risks of diarrhea and cramps. Additionally, Dr. Dabezies would warn that Naprosyn could cause GI bleeding just like aspirin. The abbreviation "NKA" was written on the cover of the patient's chart from information received by the nurse from Dr. Sinha on May 20, 1985. The abbreviation indicated no known allergies to medication. Dr. Sinha testified that he was not allergic to aspirin but he couldn't take aspirin. Dr. Dabezies testified that he advised Dr. Sinha to recontact him if there were any problems, to discontinue the medication and to return to see Dr. Dabezies if the thumb did not improve within a week's time. The plaintiff had no further contact with Dr. Dabezies.
The parties provided contradictory evidence as to whether Dr. Dabezies conformed to the proper standard of care. The jury as trier of fact is obliged to weigh and evaluate the testimony of the witnesses to determine whether there was a breach of the standard of care.
The reviewing court must give great weight to factual conclusions of the trier-of-fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987); Jackson v. Huang, 519 So.2d 119 (La.1988). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989). Evidence was presented upon which the jury could conclude that Dr. Dabezies did not breach the standard of care for orthopedic surgeons in his treatment of Dr. Sinha. The issue of damages is therefore moot.
For the above reasons, the judgment is affirmed with plaintiff to bear the costs of appeal.
AFFIRMED.