| DLN HOLDINGS, L.L.C. | * | NO. 2021-CA-0640 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| KEITH GUGLIELMO, LAND | * | |
| RECORDS SUPERVISOR FOR | | FOURTH CIRCUIT |
| PARISH OF ORLEANS | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-07477, DIVISION "L-6"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

Louis R. Koerner, Jr.
KOERNER LAW FIRM
1204 Jackson Avenue
New Orleans, LA 70130—5130

    COUNSEL FOR INTEGRATED COMMERCIAL CONTRACTORS,
    INC./APPELLANT

Donald C. Douglas, Jr.
Christopher K. LeMieux
RIESS LEMIEUX, LLC
1100 Poydras Street, Suite 1100
New Orleans, LA 70163

    COUNSEL FOR TRAPOLIN-PEER ARCHITECTS, A.P.C./APPELLEE

John I. Hulse, IV
Brian A. Gilbert
CONROY LAW FIRM, PLC
3501 N. Causeway Blvd., Ste. 500
Metairie, LA 70002

    COUNSEL FOR DLN HOLDINGS, LLC AND DAVID
    FRANCIS/APPELLEES

**AFFIRMED**
**June 29, 2022**

This is a construction contract dispute. From the trial court's judgments sustaining the peremptory exceptions of no right of action and no cause of action filed by the three defendants-in-reconvention,[1] the plaintiff-in-reconvention—Integrated Commercial Contractors, Inc. ("ICC")—appeals. Because all of ICC's claims asserted in its reconventional demand against the defendants-in-reconvention are contract-based and because ICC lacks privity with any of the defendants-in-reconvention, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises out of a renovation project at the Pelham Hotel (the "Hotel"), located in downtown New Orleans (the "Project"). There are five parties to this dispute: (i) DLN, the owner of the property on which the Hotel is situated; (ii) Pelham Hospitality, LLC ("Pelham"), the Hotel's operator; (iii) Mr. Francis, the managing member of both DLN and Pelham: (iv) TPA, the Project's architect; and (v) ICC, the Project's general contractor.

---

[1] Technically, there is only one defendant-in-reconvention--DLN Holdings L.L.C. ("DLN")—and two incidental (third-party) defendants—David Francis and Trapolin-Peer Architect, A.P.C. ("TPA"). For ease of reference, however, we refer to all three as the defendants-in reconvention.

There are two contracts pertinent to this dispute: the Construction Contract and the Architect Agreement. The Construction Contract, dated March 17, 2017, is a Standard AIA Form A101 contract, which incorporates the General Conditions in the AIA form A201-2007. On the Construction Contract's cover page, "Pelham Hospitality"[2] is designated as the Project's owner; ICC is designated as the Project's contractor. Mr. Francis signed the Construction Contract for the Project's owner. The Architect Agreement, dated March 9, 2016, is a Standard AIA Form Bl01 Agreement—Standard Form of Agreement between Owner and Architect. The parties to the Architect Agreement are TPA, as the Project's architect, and "DLN Holdings, LLC/Pelham Hospitality, Limited Liability Company," as the Project's owner.

From the Project's commencement through December 2017, ICC submitted ten Contractor's Applications for Payment; all ten applications were directed to "Pelham Hospitality 444 Common St., New Orleans, La. 70130." In March 2018, Pelham terminated ICC for cause. ICC, in response, filed a lien on DLN's property for sums it claims were due it under the Construction Contract. Seeking to have the lien removed from the public records, DLN filed this mandamus action, in July 2019, against Keith Guglielmo, the Lands Records Supervisor for Orleans Parish, and ICC. Thereafter, ICC voluntarily removed the lien. DLN, however, remained a

---

[2] The designation on the cover page of the contract reads "Pelham Hospitality" but fails to include the "LLC" at the end of the entity's name.

2

party-plaintiff in the mandamus action to preserve its right to seek damages from ICC for wrongful lien recordation.[3]

In July 2020, ICC filed, in the mandamus action, a reconventional demand against DLN and an incidental, third-party demand against both Mr. Francis and TPA.[4] The gist of ICC's reconventional demand was that it was improperly terminated for cause—as opposed to for convenience—under the Construction Contract.[5] ICC asserted claims for breach of contract, termination-for-convenience damages, fraud, detrimental reliance, and unfair trade practices.

In response, the defendants-in-reconvention—Mr. Francis and DLN together, and TPA—filed peremptory exceptions of no cause of action and no right of action. Following a hearing, the trial court sustained all the exceptions and dismissed all of ICC's claims against all the defendants-in reconvention. The trial court refused ICC's request to allow leave to amend pursuant to La. C.C.P. art. 934.

This appeal followed.

---

[3] Meanwhile, ICC filed a request for arbitration, pursuant to the terms of the Construction Contract, against DLN and Pelham Hospitality, LLC d/b/a Pelham Hospitality before the American Arbitration Association. In September 2019, ICC filed an amended arbitration claim for breach of contract, fraudulent misrepresentation, and unfair trade practices. In November 2019, the arbitration panel directed the parties to brief the issue of whether, under contract and agency law, any authority existed to bind, among others, DLN to arbitrate with ICC. In January 2020, the arbitration panel found that "DLN Holdings, L.L.C., is not a proper party to the arbitration and will be dismissed from the arbitration without prejudice." DLN, thus, was dismissed from the arbitration proceeding because it was a non-signatory of the Construction Contract containing the arbitration provision.

[4] For ease of reference, we refer to ICC's entire pleading as a reconventional demand.

[5] The Construction Contract provides different requirements for the different types of termination—cause versus convenience.

**STANDARD OF REVIEW AND GOVERNING LEGAL PRINCIPLES**

Whether a plaintiff has a cause of action and a right of action are both legal questions; hence, in determining whether the trial court was legally correct in sustaining those exceptions, an appellate court is required to conduct a *de novo* review.[6] No cause of action and no right of action are both peremptory exceptions. The function of a peremptory exception is "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action."[7]

No cause of action and no right of action are legally distinct, are designed to serve different purposes, and are governed by different procedural rules. A major difference in the procedural rules governing these exceptions is that on an exception of no right of action, evidence is admissible at a hearing on the exception to either support or rebut the exception.[8] Conversely, La. C.C.P. art. 931 provides that no evidence may be introduced to support or controvert the exception of no cause of action. The court, however, can consider exhibits attached to the petition in addressing an exception of no cause of action.[9] Indeed, La. C.C.P. art. 853 provides that a copy of any written instrument that is an exhibit to a pleading is a

---

[6] *See Hershberger v. LKM Chinese*, L.L.C., 14-1079, pp. 2-3 (La. App. 4 Cir. 5/20/15), 172 So.3d 140, 143; *St. Pierre v. Northrop Grumman Shipbuilding, Inc.*, 12-0545, p. 7 (La. App. 4 Cir. 10/24/12), 102 So.3d 1003, 1009.

[7] *Hershberger*, 14-1079, p. 3, 172 So.3d at 143 (citing La. C.C.P. art. 923).

[8] *Eubanks v. Hoffman*, 96-0629, pp. 5-6 (La. App. 4 Cir. 12/11/96), 685 So.2d 597, 600.

[9] *See Bogues v. La. Energy Consultants, Inc.*, 46,434, pp. 3-4 (La. App. 2 Cir. 8/10/11), 71 So.3d 1128, 1130-31 (observing that "[when] reviewing rulings on exceptions of no cause of action, courts may consider exhibits attached to the petition in determining whether the law extends a remedy to the plaintiff under the factual allegations of the petition"); *see also Kuebler v. Martin*, 578 So.2d 113, 114 (La. 1991); *Creamer Brothers, Inc. v. Hicks*, 39,799, p. 6 (La. App. 2 Cir. 6/29/05), 907 So.2d 880, 883.

part of that pleading for all purposes. Thus, for purposes of determining the peremptory exception of no cause of action, the content of the annexed exhibits must also be considered as true.[10]

When, as here, the issue is the lack of privity between the parties necessary to support a contract-based claim, an exception of no cause of action is the proper procedural device.[11] In ruling on a no cause of action exception, a trial court must accept as true the facts alleged in the petition and decide whether the law affords any relief to the plaintiff assuming those facts can be proven at trial.[12] Nonetheless, Louisiana has a fact-pleading system; hence, the pleader's mere conclusions, unsupported by facts, are insufficient to state a cause of action.[13] To the contrary, the court must discard allegations purporting to be factual that are merely self-serving and allegations that are nothing more than conclusions.[14]

## DISCUSSION

The sole issue presented by this appeal is whether the trial court erred in sustaining the defendants-in-reconvention's peremptory exceptions of no cause and no right of action. Proper analysis of this issue requires that we first identify the causes of action available to ICC.

---

[10] *Winder v. George*, 07-0314 (La. App. 1 Cir. 12/21/07), n.10, 2007 WL 4532139, *7 (*unpub.*).

[11] *Robinson v. North American Royalties*, 463 So.2d 1384, 1387 (La. App. 3d Cir. 1985) (observing that "[t]he exception of no cause of action is the proper procedural device for asserting that the law does not afford a remedy to the plaintiff because there is a lack of privity of contract" and citing *Louisiana Paving Company v. State, Department of Highways*, 372 So.2d 245 (La. App. 1st Cir. 1979)).

[12] *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1235 (La. 1993).

[13] *See* La. C.C.P. art. 854, Official Revision cmt. (a).

[14] *See Delta Bank & Trust Co. v. Lassiter*, 383 So.2d 330, 336 (La. 1980); *Wright v. Louisiana Power & Light*, 06-1181, p. 15 (La. 3/9/07), 951 So.2d 1058, 1069; *Milling, Benson Woodward, Hillyer, Pierson and Miller, LLP v. American Marine Holding Co.*, 98-1462, p. 1 (La. App. 4 Cir. 3/3/99), 729 So.2d 139, 140; *Hayes v. Parish of Orleans*, 98-2388, p. 3 (La. App. 4 Cir. 6/16/99), 737 So.2d 959, 961.

ICC's reconventional demand is twenty-eight pages long, contains one hundred and seven paragraphs, and references and incorporates seventy-four attached exhibits. Simply put, ICC's claims, as the trial court observed in its reasons for judgment, are payment and performance breach of contract claims. The underlying allegations that run through all of ICC's claims are as follows: Mr. Francis, TPA, or both listed "Pelham Hospitality"—a non-existent entity—as the Project's owner on the cover page of the Construction Contract and that Mr. Francis signed the Construction Contract without qualification. After signing the Construction Contract, Mr. Francis caused the name of the Project's owner to be changed on subsequent documents—Change Orders—to "DLN Holdings/Pelham Hospitality." Thereafter, in ICC's Notice of Termination, Pelham Hospitality, LLC, is represented to be the Project's owner as well as the signatory to the Construction Contract. Yet, DLN is the record owner of the Hotel; and DLN represented itself as the owner in its filings in this litigation.

In its reconventional demand, ICC divides its causes of action into two parts—those against both DLN and Mr. Francis, and those against only TPA. As to DLN and Mr. Francis, ICC asserts five causes of action: (i) bad faith breach of contract; (ii) fraud, pursuant to La. C.C. arts. 1953 and 1997; (iii) improper termination (termination-for-convenience claim); (iv) detrimental reliance, pursuant to La. C.C. art. 1967; and (v) Louisiana Unfair Trade Practices Act ("LUTPA"). As to TPA, ICC asserts two causes of action: fault and failure to perform.

In sustaining all the defendants-in-reconvention's exceptions,[15] the trial court first classified all ICC's causes of action as contract-based claims. The trial court then cited the well-settled principle that contractual privity is an essential element of a contract-based claim.[16] The trial court found, based on the reconventional demand and attachments thereto,[17] a lack of contractual privity between ICC and any of the defendants-in-reconvention. Taken these factors together, the trial court concluded that because the privity element required for a contract-based claim is lacking between, there is no support for ICC bringing these claims against the defendants-in-reconvention.

The trial court's characterization of all of ICC's claims as contract-based is legally correct. As to TPA, ICC's allegations in its reconventional demand are two-fold. First, it alleges a fault claim—TPA "failed to perform and disregarded its obligations" under the contract between ICC and the owner (the Construction Contract). Second, it alleges a failure to perform claim—TPA failed "to perform its services consistent with the professional skill and care ordinarily provided by architects." Both of these claims are contract-based and stem from the Construction Contract and the Architect Agreement.

---

[15] Two sets of exceptions were filed—one by DNL and Mr. Francis; another by TPA.

[16] *See Gurtler, Hebert and Co., Inc. v. Weyland Machine Shop, Inc.*, 405 So.2d 660, 662 (La. App. 4th Cir. 1981) (observing that "absent privity of contract a cause of action cannot be asserted based on breach of contract"); *Niland's Funeral Serv., Inc. v. Stanley*, 96-0378, p. 7 (La. App. 1 Cir. 11/8/96), 684 So.2d 982, 985 (observing that "[b]ased upon the lack of privity of contract, the trial court should have sustained the peremptory exception pleading the objection of no cause of action"); *Lumber Prod., Inc. v. Hiriart*, 255 So.2d 783, 787 (La. App. 4th Cir. 1971) (observing that the established rule is that, in the absence of a contrary statutory provision, an action *ex contractu* cannot be maintained against a party to a contract by a person who is not privy thereto).

[17] Given the defendants-in-reconvention also filed exceptions of no right of action, the trial court could also consider the exhibits the defendants-in-reconvention introduced at the hearing. In support of their exception of no right of action, DLN and Mr. Francis introduced web-content from the Louisiana Secretary of State Corporations Database, which showed that Pelham and DLN were bona fide, existing Louisiana limited liability companies.

Likewise, as to DLN and Mr. Francis, the following paragraphs of the reconventional demand, summarizing ICC's damage claims against those two parties, establish the contract-based nature of those claims:

- [Mr.] Francis and DLN willfully failed to perform their contractual obligations. Accordingly, ICC has been deprived of the benefits of the [Construction] Contract. Pursuant to La. Civ. Code Art. 1994, ICC may recover damages for defendants' nonperformance of their contractual obligations.

- DLN and [Mr.] Francis terminated ICC as general contractor on the Project for convenience. Pursuant to Article 14.4.3 of the General Conditions to the Contract, ICC is entitled to damages which include "payments for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed."

- ICC may recover damages for the bad faith failure of [Mr.] Francis individually and DLN to fully pay the subcontractors working on the Project (La. Civ. Code Art. 1997).

- Pursuant to Article 14.4.3 of the General Conditions to the Contract, ICC is entitled to damages which include "payments for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed."[18]

- Pursuant to La. Civ. Code Art. 1967, ICC is entitled to actual damages which include the expenses incurred or the damages suffered as a result of their reliance on the promise of continued employment and the other representations made by [Mr.] Francis and DLN throughout the Project.

---

[18] ICC also included a LUTPA claim in its reconventional demand. DLN and Mr. Francis argue in their appellees brief to this court that ICC has abandoned its LUTPA claim by failing to argue it. We agree. ICC's sole reference to this claim in its appellant briefs is that "Pelham's misrepresentation of the true identity of the owner of the Project/party to the [C]onstruction [C]ontract constitutes 'trade and commerce' within the meaning of LSA-R.S. 51:1405 as declared unlawful by LSA-R.S. 51:1409." ICC fails to brief this claim any further in its appellant briefs. Regardless, even assuming ICC had briefed this claim, we find it would not state a valid cause of action. This claim was premised on the actions of DLN and Mr. Francis in negotiating Change Orders. "Louisiana jurisprudence, however, has declined to find LUTPA violations when the alleged conduct was simply a "normal business relationship." *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.,* 01-1096, p. 12 (La. App. 4 Cir. 3/6/02), 812 So.2d 834, 842. Such is the case with this claim.

All of ICC's allegations against DLN and Mr. Francis, thus, are contract-based. Accordingly, we conclude, as did the trial court, that ICC's reconventional demand asserts only contract-based claims against the defendants-in-reconvention.

Given the reconventional demand asserts only contract-based claims, the dispositive issue is whether the trial court erred in rejecting ICC's attempts to establish a contractual relationship between it and the defendants-in-reconvention. Addressing this issue, we divide our analysis into two parts, as did the trial court—ICC's claims against DLN and Mr. Francis; and ICC's claims against TPA.

**ICC's Claims against DLN and Mr. Francis**

The trial court, in its written reasons for judgment, observed that ICC's lack of privity with DLN, Mr. Francis, or both dictated sustaining the exceptions filed by DLN and Mr. Francis. The trial court observed that "because DLN Holdings and [Mr.] Francis were neither a signatory to the contract nor a personal guarantor of the contract, there is no privity of contract between ICC and DLN Holdings and/or [Mr.] Francis that would allow ICC to bring these claims."

On appeal, ICC asserts four arguments in support of its argument that it, nonetheless has a cause or right of action against DLN, Mr. Francis, or both: (i) misnomer of naming of "Pelham Hospitality" as the owner in the Construction Contract; (ii) Change Orders signed by Mr. Francis that reference DLN as owner; (iii) judicial confession by DLN, in original mandamus petition, that it was the owner under the Construction Contract; and (iv) Mr. Francis' liability under La. R.S. 12:1320(D). We separately address each of these arguments.

*Misnomer*

The gist of ICC's first argument is that the omission of the LLC abbreviation after the company's name—"Pelham Hospitality"— on the

cover page of the Construction Contract creates an ambiguity as to the identity of the contracting parties. According to ICC, the reference to Pelham Hospitality was to a non-existent entity—DLN's doing-business-as entity. Continuing, ICC contends that when Mr. Francis signed the Construction Contract on behalf of that non-existent entity, he became personally liable.[19] In support of its position, ICC cites the principle that an individual who signs a contract on behalf of a non-existent entity becomes personally liable.[20]

Contrary to ICC's contention, the principle on which it relies is inapposite here. At all pertinent times, Pelham Hospitality was an existent Louisiana limited liability company; indeed, it was the entity that was the Hotel's operator. The applicable principle here, as DNL and Mr. Francis contend, is that a variant of a bona fide entity's name has no legal effect.[21]

The conclusion that an existent entity—Pelham Hospitality, LLC— was the Project owner identified on the cover page of the Construction Contract is buttressed by the following four factors. First, it is undisputed that Pelham Hospitality, LLC, was the Hotel's operator. Second, ICC, as

_____

[19] ICC, in the alternative, argues that even if the trial court had found that Mr. Francis, in signing the Construction Contract, was acting as a member of a limited liability company, La. R.S. 12:1320 does not shield him from liability for fraud. We address this argument elsewhere in this opinion.

[20] *See FT Travel--New York, LLC v. Your Travel Ctr., Inc.,* 112 F. Supp.3d 1063, 1094-95 (C.D. Cal. 2015); s*ee also Ruso v. Morrison*, 695 F.Supp.2d 33, 51 (S.D.N.Y. 2010); *Metro Kitchenworks Sales, LLC v. Continental Cabinets, LLC*, 31 A.D.3d 722, 723, 820 N.Y.S.2d 79, 80 (2d Dep't 2006).

[21] *See Ray v. Alexandria Mall*, 434 So.2d 1083, 1086 (La. 1983); *see also Spanierman Gallery, PSP v. Love*, 320 F.Supp.2d 108, 112 (S.D.N.Y. 2004) (observing that individual defendant's signature on behalf of "R.H. Love Galleries," as distinguished from defendant "R.H. Galleries, Inc.," did not subject him to personal liability for signature purportedly on behalf of fictitious entity).

noted elsewhere in this opinion, submitted ten Contractor's Applications for Payment to "Pelham Hospitality 444 Common St., New Orleans, La. 70130." Third, ICC invoked the mandatory arbitration provision of the Construction Contract to assert its claims against Pelham Hospitality, LLC.[22] Lastly, it was not until this dispute arose over ICC's termination for cause that ICC raised the misnomer issue—that the naming of Pelham Hospitality was the naming of a non-existent entity.[23] For these reasons, we find ICC's misnomer argument unpersuasive.

*Change Orders*

ICC next argues that an ambiguity as to the identity of the contracting parties was created by the discrepancy between the party appearing on the cover page of the Construction Contract—"Pelham Hospitality"—and the party appearing on the executed Change Orders—"DLN Holdings/Pelham Hospitality." Given this ambiguity, ICC contends that parole evidence is needed to determine the parties' intent.[24] Given this need to consider evidence outside the petition—here, the reconventional demand—to resolve the ambiguity, ICC contends that the granting of the exception of no cause of action was improper.

---

[22] According to the allegations of ICC's reconventional demand, its arbitration proceeding was pending solely against Pelham Hospitality, LLC, when this pleading was filed.

[23] *See Wise Constr., LLC v. Boyd*, E2009-01899-COA-R3CV, 2011 WL 864388, at *4 (Tenn. Ct. App. Mar. 14, 2011) (addressing a similar issue and observing that "[i]t was not until a very skilled attorney became their new counsel and 'spotted' the technicality was there any issue as to the contractor's identity"); *Quebecor World (USA), Inc. v. Harsha Associates, L.L.C.*, 455 F.Supp.2d 236, 242 (W.D.N.Y.2006) (treating absence of an LLC abbreviation as a misnomer).

[24] *See Succession of Shaw v. Alexandria Inv. Grp., LLC*, 17-582, p. 4 (La. App. 3 Cir. 7/26/17), 248 So.3d 332, 336.

DNL and Mr. Francis counter that there is no ambiguity created by the Change Orders; rather, they contend that the Change Orders could not change the identity of the parties to the Construction Contract. They further contend that the Construction Contract is unambiguous and that the contracting parties to that contract are Pelham Hospitality, LLC, and ICC.

At the hearing on the exceptions, the trial court commented that the Change Orders issue was ICC's strongest argument. The trial court framed the question presented as whether the Change Orders conferred standing on ICC to bring the reconventional demand against Mr. Francis, DLN, or both. Answering the question in the negative, the trial court observed that the Change Orders altered neither the nature of the Construction Contract nor the identity of the contracting parties. The trial court observed that the juridical entity—Pelham Hospitality, LLC—was "the only entity that is involved [in the Construction Contract]" and that Mr. Francis had "the protection of being behind two LLCs." The trial court emphasized the lack of privity between ICC and the defendants-in-reconvention—DLN and Mr. Francis. The trial court, thus, sustained the exceptions as to DLN and Mr. Francis. We agree.

As noted elsewhere in this opinion, the Construction Contract is a standard AIA construction contract. Change Orders, by definition, cannot change the identity of the parties to a standard AIA construction contract. As provided in AIA General Conditions §7.2:1,[25] the only effects of a Change

---

[25] AIA General Conditions §7.2:1 provides:"[a] Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect stating their agreement upon all of the following: .1 The change in the Work; .2 The amount of the adjustment, if any, in the Contract Sum; and .3 The extent of the adjustment, if any, in the Contract Time."

Order are three-fold: (i) a change in the work, (ii) a change in the contract sum, and (iii) a change in the contract time. A change in the contracting parties is not something that a Change Order can achieve. ICC's Change Order argument is unpersuasive.

*Judicial Confession*

ICC's third argument is that DLN judicially confessed it was a party to the Construction Contract in its original mandamus action petition, which was filed on July 18, 2019. The averment on which ICC relies states as follows:

> On or about March 17, 2017, DLN hired ICC as a general contractor on the Pelham Hotel renovation project ("Project"). ICC served in that capacity throughout the Project and obtained subcontracts with other trades and professions. The contract between DLN and ICC ("Contract") is attached hereto as Exhibit "A."

DNL, however, corrected this error by filing an amended petition for mandamus less than two weeks later, on July 31, 2019, in which the erroneous reference to DLN was replaced with "Pelham Hospitality, L.L.C.''[26]

A party may amend the pleadings to cure any errors or omissions absent a showing that the adverse party was misled or deceived.[27] The jurisprudence recognizes that the "amended petition constitutes the plaintiff's principal action or demand as fully as if it had been set forth in the original petition."[28] Here, the correction was consistent with the Construction Contract, which is an attachment to not only the mandamus petition but also the reconventional demand. Thus, there could be no deception. Indeed, as DNL and Mr. Francis point out, a party cannot

---

[26] "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." La. C.C. art. 1853.

[27] *Sinha v. Dabezies*, 590 So.2d 795, 798 (La. App. 4th Cir.1991); *Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee*, 05-1491, p. 5 (La. App. 4 Cir. 7/12/06), 936 So.2d 853, 857.

[28] *Moore v. Gencorp, Inc.*, 93-0814 (La. 3/22/94), 633 So.2d 1268, 1272.

judicially confess or admit an issue of law, such as an issue of contractual interpretation.[29] ICC's judicial confession argument is unpersuasive.

*Mr. Francis' Liability under La. R.S. 12:1320(D)*

Although a member of a limited liability company can be subject to personal liability to third parties on limited grounds set forth in La. R.S. 12:1320(D),[30] ICC's argument on appeal focuses on only one of those grounds—fraud. ICC's argument is that—assuming the entity identified as owner in the Construction Contract ("Pelham Hospitality") was an existent entity (a valid, limited liability company)—Mr. Francis is individually liable under the fraud exception set forth in in La. R.S. 12:1320(D).

Although this statute does not define fraud, La. C.C. art. 1953 defines it as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."[31] ICC contends that Mr. Francis's interposition of DLN and later Pelham Hospitality, LLC, in an attempt to avoid his personal liability, was fraudulent.[32] DLN and Mr. Francis counter that the

---

[29] *Howard Trucking Co., Inc. v. Stassi*, 485 So.2d 915, 918 (La. 1986) (observing that "[q]uestions of law cannot be confessed or admitted").

[30] La. R.S. 12:1320(D) provides:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

[31] *See Ogea v. Merritt*, 13-1085, p. 11 (La. 12/10/13), 130 So.3d 888, 897 (citing La. C.C. art. 1953).

[32] In its appellant briefs, ICC summarizes the facts it alleges demonstrates Mr. Francis' fraud; we recap its allegations as follows:

fraud claim that ICC pled in its reconventional demand centered on its termination

for cause and that ICC's attempt to expand its fraud claim on appeal is improper.

---

- Mr. Francis' signature on the last page of the Construction Contract may have been a naïve error on his part stemming from lack of or incompetent legal counsel, however, that does not excuse the subsequent course of dealings tainted by fraud in his clumsy attempt to avoid the personal liability consequences of that signature.

- Mr. Francis did not act on behalf of an LLC when he signed the Construction Contract, he acted in his individual capacity only. He had the option to sign with the name of the company or adding "on behalf of Pelham" but did not, demonstrating                          he                          acted                          individually.

- Unlike the Architect Agreement, which was correctly in the name of DLN, the true owner, Mr. Francis meant or subsequently attempted to "suppress the truth" and create confusion as to the true party to the Construction Contract. He executed all of the Change Orders in the name of DLN/Pelham.

- All funds to pay ICC came from Chase accounts in the name of either DLN or Pelham. Stated otherwise, DLN and Pelham paid ICC interchangeably through DLN's and Pelham's Chase bank accounts.

- DLN judicially confessed that it was the true owner of the property, as opposed to the representation on the first and last page of the Construction Contract that Pelham Hospitality—which has no existence as a legal entity—and not DLN, title owner of the immovable property, was owner.

- On February 8, 2018, Mr. Francis, who had committed the day before to the contractor Pelham hired to replace ICC to complete the Project, lied to ICC's representations when he represented that he intended a termination for convenience and thereby obtained monetary concessions and ICC's ongoing cooperation.

- Mr. Francis did not disclose that he had already interposed Pelham Hospitality, LLC, as a party to the contract with the new contractor (ICC's replacement). Nor did he disclose that he would hire counsel to terminate the Construction Contract based on false allegations of fault and falsely claim that Pelham Hospitality, LLC, whose name is not mentioned in the Construction Contract and who is just a lightly capitalized operator, was a party to the Construction Contract in which Pelham Hospitality appeared as owner.

- There was no disclosure that the defendants-in-reconvention were going to make up claims of defective work and of failure to pay the subcontractors. DLN undertook to pay the subcontractors in Change Order 6 and used that and other money due ICC to pay the new contractor and complete the Project; and

- Mr. Francis, in the Notice of Termination, deceived ICC by interposing Pelham Hospitality L.L.C., thereby attempting to avoid his personal liability.

15

Regardless, they contend that ICC's allegations, even as expanded, are insufficient to allege fraud.[33] We agree.

ICC's allegations in support of its fraud claim, as DLN and Mr. Francis observe, can be grouped into the following four categories, none of which is sufficient to establish fraud:

- "Naïve error" by Mr. Francis signing the Construction Contract in a personal capacity—A naïve error, by definition, is not fraudulent;

- Change Orders identifying the Project's owner as DLN Holdings/Pelham Hospitality—Change orders do not affect the identity of the Project's owner;

- Source of Funds used to pay ICC—All payments to ICC were submitted pursuant to Applications for Payment that ICC directed only to Pelham; and

- DLN's judicial confession that it was the true owner—DLN was the owner of the property and the Hotel; but Pelham was owner of the Project. Indeed, ICC sought progress payments from Pelham; but it attempted, after its termination, to lien DLN's property.

Given none of ICC's allegations suffice to establish fraud, ICC's argument regarding Mr. Francis' liability under La. R.S. 12:1320(D) is unpersuasive.

To recap, none of the four arguments ICC makes in support of establishing a cause or right of action against DLN, Mr. Francis, or both is persuasive.

**ICC's Claims against TPA**

In sustaining TPA's exceptions, the trial court observed that both the Construction Contract and the Architect Agreement contain integration provisions that preclude the creation of a contractual relationship between TPA, as the Project's architect, and ICC, as the Project's general contractor. In so finding, the trial court, in its written reasons for judgment, explained as follows:

---

[33] DLN and Francis contend that this attempt to expand the fraud claim demonstrates that the trial court did not abuse its discretion in denying ICC's request for leave to amend. The leave to amend issue is addressed elsewhere in this opinion.

ICC's Reconventional Demand . . . does not allege any contractual relationship between itself and TPA, and, after a review of the contracts at issue, nor could it. The AIA Al01-2007 [Construction Contract] entered into by ICC and Pelham incorporated AIA Document A201-2007, which includes the following provision:

> § 1.1.2 The Contract. The Contract Documents for the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship or any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Sub-contractor or a Sub-subcontractor; (3) between the Owner and the Architect or the Architect's consultants, or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intented [sic] to facilitate performance of the Architect's duties (emphasis added).

Further, the AIA Document Bl01-2007 [Architect Agreement] entered into between TPA, Pelham, and DLN Holdings, specifically states:

> §10.5
>
> Nothing in this Agreement shall create a contractual relationship with or cause of action in favor of a third party against either the owner or the architect.

The trial court, thus, concluded that there was no privity of contract between ICC and TPA that would allow ICC to bring the claims it asserted in its reconventional demand.

On appeal, ICC argues that those integration provisions do not preclude its detrimental reliance claim against TPA.[34] TPA counters that ICC did not plead a detrimental reliance claim against it in the reconventional demand and that, even if

---

[34] ICC also claims it has a fraud claim against TPA that the integration provisions do not preclude. But, ICC failed to brief the fraud claim against TPA; rather, it simply mentions it. As a result, we find ICC abandoned its fraud claim against TPA and do not address it.

it had done so, such claim would be precluded by the integration provisions. We agree.

To establish a detrimental reliance claim, a party must prove three elements by a preponderance of the evidence: (i) a representation (promise) by conduct or word; (ii) detrimental reliance; and (iii) a change in position to one's detriment because of the reliance.[35] Even assuming TPA made any representations (promises) to ICC, it contends that the two contracts—the Construction Contract and the Architect Agreement—directly prohibit and preclude any claim by ICC that it reasonably relied on those representations (promises). According to TPA, ICC did not plead any facts that TPA made any representation to it, but even if it did, reliance would not be reasonable as a matter of law. We find this argument persuasive.

The jurisprudence has held that integration provisions make a detrimental reliance claim based on alleged promises made outside of the integrated agreements unreasonable as a matter of law. [36] Such is the case here. Additionally, ICC, in its appellant brief, acknowledges the contract-based nature of its detrimental reliance claim against TPA; it alleges "[t]he contractual relationship that resulted from detrimental reliance establishes ICC's right of action against TPA, the architect." Again, the integration provisions, as TPA contends and the

---

[35] *Suire v. Lafayette City-Par. Consol. Gov't*, 04-1459, 04-1460, 04-1466., p. 31 (La. 4/12/05), 907 So.2d 37, 59.

[36] *See Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co*., 376 F.3d 399, 403-04 (5th Cir. 2004) (observing that "Louisiana law recognizes certain situations where a plaintiff's reliance on a promise is unreasonable as a matter of law" and that *Omnitech International, Inc. v. Clorox Co.,* 11 F.3d 1316, 1330 (5th Cir. 1994) held that "a plaintiff's reliance on promises made outside of an unambiguous, fully-integrated agreement was unreasonable as a matter of law").

trial court concluded, preclude the creation of such a contractual relationship between them.[37]

In sum, none of the arguments ICC makes in support of establishing a cause or right of action against TPA is persuasive.

**Denial of Leave to Amend**

ICC's final argument is that the trial court erred in denying its request, pursuant to La. C.C.P. art. 934, for leave to amend.[38] It is well settled that the right to amend is not absolute. Indeed, under the plain language of La. C.C.P. art. 934, "the right to amend is qualified by the restriction that the objections to the petition must be curable and the decision to allow amendment is within the trial court's discretion."[39] As this court has observed, "[a]mendment is not permitted when it would constitute a vain and useless act."[40] Such is the case here.

The entire universe of facts regarding the relationships of the various parties to ICC's purported claims, as TPA points out, is defined by the contracts that ICC attached to its reconventional demand—the Construction Contract and the Architect Agreement. ICC cannot amend its reconventional demand to cure its

---

[37] As TPA points out, the language of the integration provision set forth in AIA Document A201-2007, §1.1.2 has been construed to be unambiguous and enforced as written. *See WBCM, LLC v. BCC Properties, LLC*, 2016 WL 7014414, *5 (Md. App. Nov. 30, 2016) (*unpub*.).

[38] La. C.C.P. art. 934 provides as follows:

> When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.

[39] *Hester v. Hester*, 96-0189, p. 6 (La. App. 4 Cir. 9/11/96), 680 So.2d 1232, 1235; *Whitney Nat'l Bank v. Jeffers*, 573 So.2d 1262, 1265 (La. App. 4th Cir. 1991) (the right to amend "is notably qualified by the restriction that the objections must be curable").

[40] *Smith v. State Farm Ins. Companies*, 03-1580, p. 6 (La. App. 4 Cir. 3/3/04), 869 So.2d 909, 913; *Fortier v. Hughes*, 09-0180, p. 5 (La. App. 4 Cir. 6/17/09), 15 So.3d 1185, 1188.

failure to state a claim against the defendants-in-reconvention. Thus, the trial court did not abuse its discretion by refusing ICC's request for leave to amend.

## <u>DECREE</u>

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**